S. B. ALEXANDER *vs.* ATLANTIC, TENN. & OHIO RAILROAD COMPANY.

Where a Railroad Company issued bonds, payable at their office, in a particular way, and at the maturity of the bonds there was no office of the Company at *the place; Held*, that a demand for payment elsewhere was sufficient.

A bond of a Railroad Company for the payment of money, executed in 1862, comes within the provision of the ordinance of the Convention of 1865, and is " presumed to be solvable in money of the value of Confederate currency, subject to evidence of a different intent by the parties."

In the absence of all evidence to show the consideration of such bonds, or that the parties intended otherwise than is presumed by the ordinance, a different *intent* will not be implied from a provision in the charter, that the Company may make contracts for building the road, and may pay contractors in bonds at par value.

This was a civil action, tried before *Henry, J.*, at a Special Term of MECKLENBURG Superior Court, held in January, 1872.

The plaintiff declared on three bonds of $500 each, issued by the Atlantic, Tennessee & Ohio Railroad Company, in April and May, 1862, and also for two hundred and three coupons of said bonds, of similar series. The payment of these bonds and coupons was guaranteed by the Charlotte & South Carolina Railroad Company.

ALEXANDER *v.* ATLANTIC, TENN, & OHIO R. R. Co.

The following is a copy of one of the bonds:
"STATE OF NORTH CAROLINA,
ATLANTIC, TENNESSEE & OHIO RAILROAD COMPANY.

On the 1st of November, 1869, the Atlantic, Tennessee & Ohio Railroad Company promises to pay to Charlotte & South Carolina Railroad Company, or bearer, at their office, in Charlotte or Statesville, five hundred dollars, with interest, &c., semi-annually, according to the tenor and upon the presentation of the coupons, &c., &c. This bond is issued in conformity to the Charter, and by the authority of the Stockholders, and may be converted into stock of said Company at par by the holder."

The coupon is in the following form:
"The Treasurer of the Atlantic, Tennessee & Ohio Railroad Company, in North Carolina, promises to pay to bearer, on the 1st day of November, 1869, fifteen dollars for interest due on bond No. 169.
(Signed.)                     M. L. W., *Treasurer.*"

It was proved, that the iron of the Atlantic, Tennessee & Ohio Railroad Company had been taken up by the Confederate authorities in 1863, and that, after that, there was no office of the Company in Charlotte or Statesville, until 1870.

This suit was begun in November, 1869. The President of the Company swore, that from 1864 until 1869 the books of the Company were kept at Columbia, and that, as President, he was the financial agent of the Company, and kept his office in Charlotte, N. C.; that the reconstruction of the road commenced in 1869, and that after that time the Treasurer's office was kept in Statesville, N. C.

Defendant's counsel asked the Court to charge the jury, that the plaintiff could not recover, for want of a demand according to the tenor of the bond and the endorsement thereon; that the bonds and coupons were subject to the scale of depreciation, established by law.

His Honor charged that, if the defendant had no office either

in Statesville or Charlotte, at the time of the demand alleged
in the complaint, which was made of the Company, but at no
specified place, it was sufficient; And that the scale of deprecia-
tion established by the Legislature did not apply to the bonds or
coupons.

Verdict for plaintiff. Motion for new trial. Motion over-
ruled. Judgment and appeal.

*Jones & Johnston,* for plaintiff.
*Wilson* and *Barringer,* for defendant.

READE, J. The case presents two points :

1. Whether there was a sufficient demand, before action
brought ?

2. Whether the bond and coupons are subject to the legis-
lative scale ?

1. The bonds on their face were to be presented at the office
of the defendant in Charlotte or Statesville. They were not
so presented, because, as was alleged, the defendant had no
offices at those places at the time of their maturity, and so
they were presented to the defendant elsewhere, and payment
demanded.

His Honor instructed the jury, that, if the defendant had no
offices at the places named, then the demand made at their
office in Columbia, S. C., was sufficient. We think the in-
struction was right, even upon the supposition that a demand
was necessary.

2. The ordinance of the Convention, October 1865, provides
that all executory contracts, solvable in money, made between
certain dates, including the date of these bonds, shall be deemed
to have been made with the understanding that they were
solvable in money of the value of Confederate currency, accord-
ing to a scale which the Legislature should fix, subject to
evidence of a different intent of the parties.

Here was a contract solvable in money, and deemed to be

solvable in Confederate currency. Was there any evidence that the parties intended otherwise, so as to take this case out of the presumption made by the ordinance ? It is not pretended that there was any such intent *expressed* by the parties, but it is insisted that such intent is to be *implied* —that the bonds express upon their face that they are issued in " conformity to the charter," and that the charter forbids the bonds of the Company " to be used at a discount below their par value," and, therefore, it is to be implied, that when the Company issued these bonds it got par value for them ; and that when the Company comes to pay the bonds, it must pay par value, *i. e*, the nominal amount. But this seems not to be true in fact. The charter (S. 41) provides that the Company may make contracts for building the road, and may pay the contractors in bonds at par value, *i. e.*, may pay a hundred dollar debt with a hundred dollar bond ; but then, the debt may have been contracted with a view to the depreciation of the bond with which payment was to be made, so that a hundred dollar contract in *name* may have been only a fifty dollar, or a ten dollar contract, in *value*. And, in such a case, a hundred dollar bond issued at par in name, in payment of such contract, would really be issued for the value of fifty dollars or ten dollars. So that, in view of the history of the time when these bonds were issued, of which we take notice, it is rather to be implied, if indeed it be not to be taken as certain, that the bonds, although issued at par in name, were really issued at very great discount. Especially is this to be taken to be so, inasmuch as the plaintiff has not shown for what these bonds were issued, or what consideration was actually paid for them.

It would have been competent for the plaintiff to show that these bonds were given in payment for labor, or for materials, and to show the value of the labor or materials. But he has shown nothing to relieve the case from the presumption that the bonds are solvable in money, of the value of Confederate currency at the time they were issued.

And then it is insisted, that if it appears, either expressly or by implication, or by presumption, that the bonds were issued for less than par, then the Company acted *ultra vires*, and the bonds are void.

It would do the plaintiff no good to maintain this, for thereby he would lose his debt altogether; and the defendant has made no such objection. The plaintiff's counsel did insist, that no such presumption attached to the bonds; because the company had no power to issue bonds with such a quality. But still, he insisted, that if the bonds have that quality, yet, the company cannot take advantage of its own wrong, and repudiate them. The argument is a dangerous one for the plaintiff, because the authorities are, that if the company had no *power* to issue the bonds, they are void; but if they had power to issue them, and there was only some *irregularity* connected with them, the company shall not take advantage of such irregularity. Here then, the plaintiff says, the company had power to issue the bonds, and is liable for their *full* value: the company admits its power to issue the bonds, but insists, that it is liable only for their real value. Both parties, therefore, admit the *power* to issue the bonds just as they are, and their *construction* only is before the Court. The charter authorizes the issue of the bonds, at their par, or full value, in payment for building the road; and allows them to be converted into stock, dollar for dollar, or redeemed with money; and then the statute says, that shall be deemed to be money of the value of Confederate Treasury notes, nothing else appearing. The bonds themselves stipulate, that they may be converted into stock at their par value, by the holder. The holder, the plaintiff, has chosen not to convert them into stock, but to sue for their money value; which, in the absence of proof to the contrary, the statute fixes to be money of the value of Confederate notes.

There is error.

PER CURIAM                                    *Venire de novo.*